## CLARK v. ASSOCIATED RETAIL CREDIT MEN OF WASHINGTON, D. C.
### No. 7139.

United States Court of Appeals for the District of Columbia.

Decided April 10, 1939.

---

VINSON, Associate Justice, dissenting.

Richard A. Harman and John G. Epaminonda, both of Washington, D. C., for appellant.

Milton W. King and Bernard I. Nordlinger, both of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and VINSON, Associate Justices.

EDGERTON, Associate Justice.

Plaintiff's complaint, in its first count, charges the following facts. Plaintiff was and is the operator of a dry-cleaning establishment, and requires a good credit reputation. Defendant is an incorporated agency for investigating and reporting credit. Plaintiff suffered from arterial hypertension and had lost, but was slowly recovering, his sense of sight; in order to recover, it was necessary to avoid excitement and worry. Defendant knew these facts. Defendant agreed with a merchant to collect from plaintiff an alleged debt of $61.80. "For the purpose and with the intent of injuring the plaintiff both psychologically and physiologically," of injuring his business and rendering him unable to conduct it properly, and of "extorting" the $61.80, defendant sent plaintiff three letters which are attached as exhibits.

These letters state that defendant is a member of a nation-wide organization with branches in every locality, and that it keeps credit reports of the millions of customers of its members. The letters contain the following language: "This unpaid account may jeopardize your credit standing. We do not want to enter it against your record if we can help it * * * We earnestly suggest that you protect your credit and avoid needless expense * * * Do you realize how your continued neglect of this account is going to affect your credit standing? * * * Wherever you go, whatever you do, a bad credit record will follow you like a shadow * * * Your future credit standing depends on your prompt payment of this account. Further neglect on your part will necessitate drastic action * * *" The final letter said: "This Account Must be Paid" within seven days, and threatened suit, attachment, and garnishment. The backs of the letters bore, under the heading "Some of our members," a list of some 300 concerns, most or all of which do business in Washington. The complaint charges further that with the purpose and intent of "worrying plaintiff and aggravating his condition" defendant wrote plaintiff that no reply had been received to an earlier letter; that this statement was false, as defendant knew; and that "the said acts," meaning apparently all defendant's alleged acts, "did aggravate plaintiff's condition and did injure him both psychologically and physiologically and caused him to have a relapse and severe attacks of arterial hypertension" and suffer "mental and physical agony," and to spend not less than $100 in doctor's bills and to be unable properly to attend to his business. A second count charged substantially the same acts as violations of the blackmail section of the District of Columbia Code, D.C.Code 1929, T. 6, § 42.

Defendant's demurrer was sustained, and plaintiff appeals.

Briefly, the complaint charges and the demurrer admits that by the use of words, some false and some merely minatory, defendant intentionally inflicted upon the plaintiff injuries both mental and physical, for the purpose of collecting a bill. The question is whether this conduct, with these purposes and these results, is actionable.

Defendant urges that neither Blackstone nor any local authority recognizes

such a tort. But if we are in one of the "open spaces" in the law of this jurisdiction we must fill it as well as we can, with a view to the social interests which seem to be involved and with such aid as we can get from authorities elsewhere and from "logic, and history, and custom, and utility, and the accepted standards of right conduct."[1] We cannot evade this duty; for unless we establish a right in the plaintiff we establish a privilege or immunity in the defendant. The fact that "the question is novel in this jurisdiction" does not mean that the plaintiff cannot recover. Cushing v. Rodman, 65 App.D.C. 258, 259, 82 F.2d 864, 104 A.L.R. 1023.

■ In legal terminology, "Bodily harm is any impairment of the physical condition of another's body or physical pain or illness,"[2] and "the minute disturbance of the nerve centers caused by fear, shock or other emotions does not constitute bodily harm,"[3] although it may produce it. The conventional terminology is used in this opinion. But lawyers have begun to learn from doctors and physiologists that "We fear not in our hearts alone, not in our brains alone, not in our viscera alone— fear influences every organ and tissue."[4] "And what is true of fear is true in kind, though not in degree, of the lesser emotions such as worry and anxiety."[5] The tendency of the law to ignore "mental" harm diminishes. The notion that it cannot give redress for such harm is long since exploded; it can, and it frequently does—usually in connection with harm of other kinds, as in battery, false imprisonment and defamation.[6] But the conventional distinction between mental and physical harm still plays a large part in the law.

■ The law does not, and doubtless should not, impose a general duty of care to avoid causing mental distress. For the sake of reasonable freedom of action, in our own interest and that of society, we need the privilege of being careless whether we inflict mental distress on our neighbors.[7] It is perhaps less clear that we need the privilege of distressing them intentionally and without excuse. Yet there is, and probably should be, no general principle that mental distress purposely caused is actionable unless justified. Such a principle would raise awkward questions of de minimis and of excuse.[8] "He intentionally hurt my feelings" does not yet sound in tort, though it may in a more civilized time.

But the law has long given redress, in some circumstances, for intended mental harm without more. For centuries it has permitted recovery, under the name of assault, for intentionally-induced fear of a contact either harmful or offensive. In such cases the plaintiff has not been required to show that the fear produced physical consequences. The legally protected interest in bodily integrity has not been infringed, but it has been threatened; and the prospect of physical consequences, though no such consequences followed, has been accepted as adding to the intended mental disturbance a physical color sufficient to call for redress.

For a long time the assault cases stood practically alone; but in recent years an analogous principle has begun to develop. Several cases in which there was no physical harm and no assault have allowed recovery for intended mental harm which was serious enough so that it might have been found that defendant's acts had creat-

---

[1] Cardozo, The Nature of the Judicial Process, pp. 112, 113.

[2] Am. Law Institute, Restatement of the Law of Torts, § 15.

[3] Ibid., Comment B. "Severe shock" alone is recognized as a "form of ill health" or "illness" in Owens v. Liverpool Corporation, [1938] 4 All Eng. 727 (Court of Appeal).

[4] Crile, The Origin and Nature of the Emotions, p. 60; quoted in Goodrich, Emotional Disturbance as Legal Damage, 20 Mich. L. Rev. 496, 498.

[5] Goodrich, op. cit. p. 503.

[6] In connection with forcible ejection from a train, for example, it is recognized that "Wounding a man's feelings is as much actual damage as breaking his limbs." Head v. Georgia Pacific Railway Co., 1887, 79 Ga. 358, 360, 7 S.E. 217, 218, 11 Am.St.Rep. 434. But in Perry v. Capital Traction Co., 59 App.D.C. 42, 32 F.2d 938, certiorari denied, 280 U.S. 577, 50 S.Ct. 31, 74 L.Ed. 627, this court, following earlier cases, held that the victim of a negligent collision could not recover for "mental pain or suffering caused by shock from the accident, not traceable to the physical injuries." The case is counter to the whole current of modern authority.

[7] Cf. Bohlen, Fifty Years of Torts, 50 Harv.L.Rev. 725, 733.

[8] Cf. Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv. L.Rev. 1033, 1035.

ed a risk of physical illness. In Nickerson v. Hodges, 146 La. 735, 84 So. 37, 9 A.L.R. 361, defendant, as a practical joke, induced plaintiff to think and announce that she had found a pot of gold. Resulting "mental and physical suffering" was alleged, but apparently only mental suffering and humiliation were proved. Some of the cases involved attempts to collect debts. In Barnett v. Collection Service Company, 214 Iowa 1303, 242 N.W. 25, defendant sent to plaintiff, an employed widow, a series of letters threatening suit and also to "bother" plaintiff's employer "until he is so disgusted with you that he will throw you out the back door. * * * We will tie you up tighter than a drum." The letters also suggested that plaintiff was as bad as a criminal. There was "no claim of any physical injury" but plaintiff became nervous and could not work, suffered mental pain, cried and had to go to bed. A judgment for the plaintiff was affirmed, on the ground that defendant's acts had been done for the "purpose of harassing and annoying the appellee mentally." In LaSalle Extension University v. Fogarty, 126 Neb. 457, 253 N.W. 424, 425, 91 A.L.R. 1491, a man who had signed an application for a correspondence course received some thirty letters, which varied from mild reminders and threats to garnish wages to accusations of moral turpitude "well calculated to coerce the defendant into payment."[9] Plaintiff was allowed to recover for worry, humiliation and loss of sleep, on the theory that the letters were written for the purpose of harassing him until he paid. Maze v. Employees' Loan Society, 217 Ala. 44, 114 So. 574, may be distinguished on the ground that defendant's conduct was less obnoxious, quantitatively at least, and involved less risk of harm. There a debtor was denied recovery against a creditor who had made repeated demands for payment, one of them in "a gross, rude, and insulting manner." Plaintiff alleged resulting "mental distress and anxiety and great physical inconvenience," but, as the court observed, there was no physical injury.[10] "We would expect * * * the gradual emergence of a broad principle somewhat to this effect: that one who, without just cause or excuse, and beyond all the bounds of decency, purposely causes a disturbance of another's mental and emotional tranquillity of so acute a nature that harmful physical consequences might be not unlikely to result, is subject to liability in damages for such mental and emotional disturbance even though no demonstrable physical consequences actually ensue."[11] The advantage to society of preventing such harm seems greater than the advantage of leaving ill-disposed persons free to seek their happiness in inflicting it.

In the present case the shock which defendant intentionally inflicted not only risked, but actually caused, physical harm. In such circumstances, recovery has repeatedly been allowed.[12] A leading case is Wilkinson v. Downton, [1897] 2 Q.B. 57, in which defendant, as a practical joke, told plaintiff that her husband was smashed up in an accident; the shock made plaintiff seriously ill.[13] Great Atlantic & Pacific Tea Company v. Roch, 160 Md. 189, 153 A. 22, imposes liability for physical injuries caused by the shock of receiving from a grocer a package containing a rat instead of a loaf of bread. In Johnson v. Sampson, 167 Minn. 203, 208 N.W. 814, 46 A.L.R. 772, defendants charged a fifteen-year-old schoolgirl with unchastity, and threatened her with reform school unless she confessed. She was allowed to re-

---

[9] Defendant also wrote letters to plaintiff's neighbors and to his employer, but the court did not rely on this.

[10] Two collection cases which were decided in the defendant's favor are not in point, because there the plaintiff alleged no mental damage. In Apolinaire v. Roca, 43 La.Ann. 842, 9 So. 629, defendant sent offensive dunning letters to plaintiff. The only damage alleged was the destruction of credit. In Riley v. Askin & Marine Company, 134 S.C. 198, 132 S.E. 584, 46 A.L.R. 558, a girl failed to recover for a dunning letter which accused her of dishonesty; but the only damage alleged was to reputation, the action accordingly was for libel, and it failed for lack of publication.

[11] Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv.L.Rev. 1033, 1058.

[12] Cases are cited in the text. Recovery has even been allowed in various types of cases in which defendant has unintentionally but negligently subjected plaintiff to a mental shock likely to result, and actually resulting, in physical harm. Cf., e. g., Sundquist v. Madison Railways Company, 197 Wis. 83, 221 N.W. 392; Rasmussen v. Benson, Neb., 1938, 280 N.W. 890; Magruder, op. cit. supra; note, 48 Yale L.Jour. 303; Am. Law Institute, Restatement of the Law of Torts, §§ 306, 312, 313.

[13] Cf. Bielitski v. Obadiak, 61 Dom.L. R. 494.

cover for mental anguish and nervous shock with resulting impairment of health. A number of cases imposing liability involve attempts to collect debts or recover property. In Gadbury v. Bleitz, 133 Wash. 134, 233 P. 299, 44 A.L.R. 425, an undertaker kept the body of plaintiff's son, and refused to cremate it, in order to induce plaintiff to pay for the previous funeral of a son-in-law. Plaintiff lost weight, and the shock "materially affected her health."[14] Recovery was allowed because the wrong was "wilful." In Kirby v. Jules Chain Stores Corporation, 210 N.C. 808, 188 S.E. 625, defendant's collection agent called to plaintiff that she was a "damn deadbeat" and that he would bring the sheriff. Plaintiff was made ill and had a miscarriage. In Engle v. Simmons, 148 Ala. 92, 41 So. 1023, 7 L.R.A.,N.S., 96, 121 Am.St.Rep. 59, 12 Ann.Cas. 740, defendant, to collect a claim against plaintiff's husband, entered plaintiff's dwelling in the husband's absence, refused to leave, took an inventory of household goods and made "threats of what he intended to do." Plaintiff was thrown into a state of nervous excitement which resulted in premature childbirth and physical disability. The court observed that not only defendant's refusal to leave, but his subsequent conduct, was unlawful. In Stockwell v. Gee, 121 Okl. 207, 249 P. 389, 390, defendant, plaintiff's landlord, came to plaintiff's premises and in a loud and threatening manner demanded possession. Plaintiff was frightened, became nervous and sick, and was confined to bed. An assault might have been found, but the court based recovery on the broad ground that defendant's "acts and his demeanor were unwarranted, unauthorized, and wrongful," and that physical injury had been proximately caused through emotion. In Patapsco Loan Company v. Hobbs, 129 Md. 9, 98 A. 239, a woman was allowed to recover for physical illness which resulted from excitement caused by defendant's emphatic and threatening demands, made on plaintiff's premises, for payment of a debt. The court relied on the notion of trespass to real property. In May v. Western Union Telegraph Company, 157 N.C. 416, 72 S. E. 1059, 37 L.R.A.,N.S., 912, defendant's men were entitled to enter the land occupied by plaintiff, but they acted in such a lewd and boisterous way that she was made ill. This was held actionable. In

Peoples Finance & Thrift Co. v. Harwell, 183 Okl. 413, 82 P.2d 994, recovery for illness was denied, but in that case the creditor intended no mental shock or other injury; he merely demanded payment and announced his intention of enforcing his mortgage. The cases, however, are not unanimous. Braun v. Craven, 1898, 175 Ill. 401, 51 N.E. 657, 42 L.R.A. 199, denied recovery for shock and St. Vitus' dance caused by defendant's loud and angry attempt to collect rent from plaintiff, accompanied by threats to call a constable; and in Brooker v. Silverthorne, 111 S.C. 553, 99 S.E. 350, 5 A.L.R. 1283, insults and threats of violence over the telephone were held not actionable, although they resulted in shock and sickness.

The plaintiff's claim stands, at present, on even higher ground than in any of the cases that have been discussed. Whatever may appear upon a trial, defendant now admits by its demurrer that it sought to cause not merely mental harm but physical harm as well, and that it succeeded in its purpose. No one has a general license purposely to injure the bodies of others. That mental means are used can be no excuse. Neither is it an excuse that an injured man's skull was thin or his constitution sensitive and that the means by which defendant intentionally injured him would not have injured a normal man. It constantly happens that conduct which would normally be legal and harmless is made illegal by a harmful purpose and a harmful result. Driving a car, like threatening suit, is usually legal, but it is not legal to drive a car with the purpose and effect of wounding a man. It is not made legal by proof that the driver could not have succeeded in his purpose without the aid of peculiar circumstances.

The infliction of bodily harm by words, like its infliction by blows, may on occasion be privileged. If A assaults B with a dangerous weapon B may, if he can, frighten A off with threats, and A cannot complain if the shock makes him ill. But neither beating a debtor nor purposely worrying him sick is a permissible way of collecting a debt. We do not suggest that creditors must use care to avoid shocking their debtors or may not, for purposes of collection, intentionally inflict some worry and concern. But, as is suggested by several of the cases discussed above, they should re-

---

[14] The court classified plaintiff's sufferings as mental only, but they would commonly be called physical.

frain from conduct intended or likely to cause physical illness.

There is a growing tendency to check offensive collection methods.[15] Conspicuous public announcement that the plaintiff owes money to the defendant has been held actionable as libel;[16] and this court has ruled that a course of conduct intended to collect an admitted debt may amount to a violation of the blackmail statute of the District of Columbia.[17] In that case the collector repeatedly intruded into the debtor's premises, and conspicuously posted outside his door thirty cards demanding payment. Various efforts to collect debts have been held to come within the provision of the federal Criminal Code which prohibits mailing envelopes, postal cards, etc., which display defamatory or threatening matter or matter calculated to reflect injuriously upon the conduct of another.[18]

We think the demurrer to the first count of the complaint should have been overruled; but the demurrer to the second count was properly sustained, for we find here no violation of the blackmail statute of the District. That statute prohibits accusing or threatening to accuse a person of a crime or of conduct which would tend to disgrace him or subject him to ridicule or contempt, or threatening to expose his infirmities or failings, with intent to extort pecuniary advantage or to compel any action.[19] Defendant threatened, in effect, to sue for a debt, and to notify its subscribers or correspondents of plaintiff's failure to pay a debt. We think the statutory words "disgrace," "ridicule," "contempt," to say nothing of the word "blackmail," contemplate accusations, actual or threatened, more invidious than this in their matter or manner.[20] In Slater v. Taylor, supra, this court declared that "A man who, without cause, fails to pay his debts, merits and receives the contempt of society." But the court was dealing with a case in which the collector, by posting his demands where the debtor's neighbors and visitors would see them, implied that there was no good cause for the debtor's failure to pay, and clearly tended to inflict disgrace, ridicule, and contempt. A mere notice of the fact of nonpayment, conveyed privately to credit-giving business houses, carries no such implications. As there was no blackmail, we need not decide whether a victim of blackmail is entitled under our statute to maintain a civil action.

Reversed as to the first count.

Affirmed as to the second count.

VINSON, Associate Justice.

I concur with the majority that the demurrer to the second count of the declaration was properly sustained. I am unable to agree that the district court erred in sustaining the demurrer to the first count. I think the judgment should be affirmed.

The majority opinion proceeds on the theory, as I understand it, that the declaration charges the "defendant intentionally inflicted upon the plaintiff injuries both mental and physical, for the purpose of collecting a bill. The question is whether this conduct, with these purposes and these results, is actionable." I cannot agree that the point in issue is limited to the intentional infliction of injury upon the plaintiff for the purpose of collecting a bill.

In addition to the charge in the declaration that the action of the defendant was with the intent of injuring the plaintiff both psychologically and physiologically, it is definitely asserted therein that the action of the defendant was "without any right or color of right, and without justification." Thus, as I see it, it becomes necessary to decide whether the acts complained of were done "without any right or color of right, and without justification," and whether, in any event, they were sufficient to cause actionable injury to plaintiff.

---

[15] Cf. Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv.L.Rev. 1033, 1063; note, 22 Minn. L.Rev. 1035; High Pressure Collection Methods, 66 U.S.L.Rev. 349.

[16] Thompson v. Adelberg & Berman, Inc., 181 Ky. 487, 205 S.W. 558, 3 A.L.R. 1594. In Muetze v. Tuteur, 77 Wis. 236, 46 N.W. 123, 9 L.R.A. 86, 20 Am. St.Rep. 115, defendant mailed letters to plaintiff in envelopes which indicated that "bad debts" were involved, and also circulated plaintiff's name among subscribers as a person not to be trusted.

[17] Slater v. Taylor, 31 App.D.C. 100, 18 L.R.A.,N.S., 77. Cf. State v. Richards, 97 Wash. 587, 167 P. 47.

[18] 18 U.S.C.A. § 335. United States v. Brown, C.C., 43 F. 135; United States v. Burnell, 75 F. 824; United States v. Prendergast, D.C., 237 F. 410.

[19] 31 Stat. 1323, c. 854, § 819; D.C. Code, Tit. 6, § 42.

[20] Cf. Barnett v. Collection Service Company, 214 Iowa 1303, 242 N.W. 25.

68

The letters filed as exhibits were made part of the declaration.[21] Where there is a variance between the allegations of the declaration and the terms of the exhibits, the exhibits control as far as their legal effect is concerned. Southern Surety Co. v. Commercial Casualty Ins. Co., 3 Cir., 31 F.2d 817; Stockton Comm. Co. v. Narragansett Cotton Mills, D.C., 11 F.2d 618; Jones v. Peacock, D.C., 3 F.2d 827; Vital v. Kerr, 2 Cir., 297 F. 959; Continental Securities Co. v. Interborough Rapid Transit Co., C.C., 165 F. 945. The demurrer tests the declaration, which includes the letters, in its entirety. It admits only the facts well pleaded. It does not admit the allegation that the course of conduct was done "without any right or color of right, and without justification." The allegation to this effect is a mere conclusion of law and is not admitted by the demurrer. Such allegation in the first count is

[21] Letters are as follows:

October 2, 1937.

Dear Mr. Clark: The member of this Association whose name is shown above, has reported your account to us with the information that he has not been able to collect it.

We are members of a nation-wide organization, owned and operated by the retail interests of the country, with members and branch credit bureaus in every locality in the United States. In its files are kept accurate up-to-date credit reports of the millions of customers of its members.

Probably you haven't realized that this unpaid account may jeopardize your credit standing. We do not want to enter it against your record if we can help it—so before taking other steps, we are giving you this opportunity to keep your credit record clear by paying this bill within the next ten days.

If it is not paid within that time, we will have to proceed with collection, according to our member's instructions.

But we earnestly suggest that you protect your credit and avoid needless expense by making immediate arrangements with our members or prompt and definite settlement of his account.

Sincerely,

P. S. To avoid delay, make all payments and address all communications direct to the member whose name is shown above. Use the enclosed addressed envelope.

October 12, 1937.

Dear Mr. Clark: Your failure to respond to our last letter about the above account is disappointing. You have had the utmost consideration and leniency from our member and from us, and yet you have not responded to his requests, nor to ours, for a settlement.

Do You Realize How Your Continued Neglect of This Account is Going to Affect Your Credit Standing?

As we told you in our last letter, we are members of a mutual, nation-wide Association, owned and operated by the retail credit grantors throughout the country. Its purpose is to give our members full protection against credit losses—protection backed by law and the power and prestige of our entire membership.

At the same time it is our desire to protect you, too, against the embarrassment that follows a "poor pay" record. But you must do your part!

Remember your credit record is the measuring line by which all merchants—all credit grantors—judge you. Wherever you go, whatever you do, a bad credit record will follow you like a shadow. Isn't it important for you, then, to keep your record clear?

Your future credit standing depends on your prompt payment of this account. Further neglect on your part will necessitate drastic action by the member. Mail your payment now—direct to the member whose name is shown above—in the addressed envelope enclosed.

Yours very truly,

October 23, 1937.

Dear Mr. Clark: We've been lenient with you—but we haven't even received the courtesy of a reply to our letters. Now it's up to you!

This is your final notice!

This Account Must be Paid by Saturday, October 30th.

You are hereby given our Last and Final Notice that unless this account is paid or satisfactorily adjusted on or before the above date, we will return the claim to the creditor who will no doubt refer it to their attorney, who will take action to secure judgment, with lawful interest together with all costs and disbursements of the action.

The said attorneys then, without delay, will resort to whatever remedies are afforded creditors, such as garnishment or attachment of any salary, funds or property that may belong to you or that may be due you.

Yours truly,

P. S. Time, expense and trouble will be avoided by making immediate payment to the member whose name is shown above, using the addressed envelope enclosed.

equal in its import to the allegation "and with the intent to extort" which is found in the second count. The majority opinion properly holds that the second count did not constitute blackmail. It properly concludes that the letters did not, and could not, support the alleged violation of the statute.

The demurrer does not admit that a tort was committed. It admits facts well pleaded, but does not admit conclusions of law. The demurrer admits that the letters were intentionally composed and delivered by the defendant for the purpose of collecting a debt. It admits that the defendant was a mercantile reporting agency undertaking through a contract with the creditor to collect the debt. It admits that in this effort it called to the attention of the plaintiff that an unfavorable credit report would be made if prompt payment of the debt was not made. It admits a threat of suit if the debt was not promptly paid—suit to be instituted by the creditor upon a report to him that they had been unsuccessful in collection. It admits knowledge of the plaintiff's physical condition. It does not admit that the letters were sent "without any right or color of right, and without justification." It does not admit that the letters were of such nature as to cause the injury. Those are the questions which the demurrer raises for consideration.

In my opinion, the pleading, taken as a whole, does not show as a matter of law that the letters were composed and delivered "without any right or color of right, and without justification." The defendant was proceeding in the exercise of a right sanctioned by law if performed in a proper, legal, manner. I think it performed its legal right in this manner. It cannot be seriously doubted that defendant could have, instead of writing these letters, immediately instituted suit to reduce this claim to judgment. This action would have been intentional and, if done, would not have constituted a tort. It is difficult for me to see, when suit itself would have been the exercise of a legal right, and in this case would not have constituted a tort, how the writing of these three letters seeking settlement of this account can be considered a tort. It cannot be seriously doubted that defendant could have, through independent investigation, made an unfavorable credit report affecting plaintiff in the business world. Such re-port, if based upon this particular transaction, would have been unfair if the plaintiff was unjustly charged by the creditor with this debt. The defendant gave opportunity to the plaintiff to set forth any claim that he might have affecting the justness of the amount. Nothing appears in the record questioning the justness of the debt and that it was due and payable. I think that in this respect the defendant was proceeding in the performance of a legal right in a legal manner.

My position is well stated by the majority in their quotation from Mental Disturbance In Torts, 49 H.L.R. 1058, which is as follows: " 'we would expect * * * the gradual emergence of a broad principle somewhat to this effect: that one who, *without just cause or excuse, and beyond all the bounds of decency,* purposely causes a disturbance of another's mental and emotional tranquillity of so acute a nature that harmful physical consequences might be not unlikely to result, is subject to liability in damages for such mental and emotional disturbance even though no demonstrable physical consequences actually ensue.' " [Italics supplied.]

This language declares actionable such mental disturbance when there is no demonstrable physical injury shown to result therefrom. A necessary element to make the course of conduct actionable is that it be "without just cause or excuse," and beyond all the bounds of decency." In my opinion, this element must likewise be present to make the conduct actionable when such mental disturbance results in physical injury. The cases cited in the text of the majority opinion, in which recovery was allowed, showed conduct of this nature.

The majority opinion also contains the following language: "We do not suggest that creditors must use care to avoid shocking their debtors or may not, for purposes of collection, intentionally inflict some worry and concern. But, as is suggested by several of the cases discussed above, they should refrain from conduct intended or likely to cause physical illness. There is a growing tendency to check offensive collection methods."

Since the basis of their conclusion is that psychological disturbances, intentionally inflicted, from which physical injury flows, is actionable, it is difficult for me in this language to distinguish between the

worry and concern intentionally inflicted without liability, and that which is actionable. It seems to me that the distinguishing factor is whether or not the conduct was "without just cause or excuse and beyond all the bounds of decency" or, in the language of the declaration, "without any right or color of right, and without justification."

I am in thorough accord that overbearing, brow-beating, and other "high-powered" methods to compel collection are not to be well-received in court, and that where a creditor, his lawyer, or agent transcends his legal rights and harasses or coerces by threats or communications to the debtor, his employer, neighbors, or the public, and humiliates or embarrasses the debtor, causing a psychological disturbance and mental suffering, such conduct is actionable even though no physical injury is inflicted.

The Barnett case and the LaSalle University case, cited in the majority opinion, more closely akin in factual situation, are distinguishable from the case at bar. In the Barnett case the creditor knew that the wages earned by a clerk were exempt. The opinion shows that the letters were coarse, vindictive, contained threats of various kinds in the event the debtor did not pay (no threats of physical injury), among which were threats to sue; to appeal directly to debtor's employer with the assurance that this would be successful and "we will bother him until he is so disgusted with you that he will throw you out the back door."; and, again, that unless payment is made within five days "we will tie you up tighter than a drum." These letters suggested that the debtor was as bad as a criminal and other similar matter.

In the LaSalle University case some 37 letters were written over a period of two years, seeking to collect a debt which the debtor contended to be wholly void in virtue of a specific statutory provision. The creditor admitted it received two letters from the debtor containing information that no contract had been entered into with it or that any money was owing to it. The course of the collection letters continued thereafter. Creditor sued to collect the alleged indebtedness and was unable to prove the execution and delivery of the note, the court dismissing its petition. The letters varied "from moderate reminders of an unpaid balance to accusa-

tions of dishonesty and moral turpitude and threats, and were such as were well calculated to coerce the defendant [debtor] into payment." Lurid envelopes and letterheads were used. One bore a facsimile of lightning about to strike someone. One of them was a garnishment notice with the name of plaintiff's employer in the heading of the petition. The creditor wrote the employer of the debtor as well as his neighbors.

In the instant case, there are none of these improper methods employed. There is no denial of the indebtedness or the assertion that the amount for any reason was uncollectible. There is nothing vindictive in the letters. There is no charge of dishonesty or moral turpitude. No letters were sent to neighbors or threats of improper conduct in reporting upon plaintiff's credit rating. The only statement which could be considered a threat was the statement that unless the debt was paid the defendant would make a report to its members, whom they represented, as to a "poor pay" record which is not suggested in the majority opinion to be beyond their legal rights. There was no threat here that the defendant itself would bring suit. The debtor was advised if the claim was not settled it would return the claim to the creditor "who will no doubt refer it to their attorney, who will take action to secure judgment, with lawful interest together with all costs and disbursements of the action." No threat of making known to anyone that the debt was not paid except in connection with the "poor pay" record was made. No suggestion that the plaintiff was as bad as a criminal or other similar suggestion was made.

I approve the rule laid down in these cases upon the facts therein involved. I further approve the language in the Barnett case that "in such a case the door to recovery should be opened but narrowly and with due caution" and that "a creditor or his agent has a right to urge payment of a just debt and to threaten to resort to proper legal procedure to enforce such payment".

I subscribe to the majority opinion in its conclusion that emotional disturbance may induce physical injury and that in a proper case an action therefor in damages may lie, but I maintain that a mercantile reporting agency may report to its members the "pay" record of a man in business—without liability in damages—that a

creditor has a legal right to the payment of an obligation due him; that either through himself, an attorney, or agent, he may employ proper means to collect it, even to threats to sue or suit itself. I feel, moreover, that an indebtedness incurred can be collected, or attempts made to collect it, in proper manner, such as in this case, though, perchance, the debtor may have high blood pressure and that fact is known to the creditor or his agent. I do not think the acts charged in this case, with the most liberal construction favoring the debtor, sufficient to cause an actionable injury.