## WALLACE v. SHOREHAM HOTEL CORPORATION.

### No. 407.

Municipal Court of Appeals for the District of Columbia.

Sept. 25, 1946.

Harry J. Maginnis, of Washington, D. C. (Francis J. Kelly and J. Louis O'Connor, both of Washington, D. C., on the brief), for appellant.

Stephen G. Ingham, of Washington, D. C. (William E. Furey, of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

This appeal is from an order dismissing a complaint for failure to state a cause of action. The substance of the complaint is that plaintiff, in company with his wife and four friends, was a guest at the cocktail lounge of defendant's hotel; that, in payment of the check rendered, plaintiff gave the waiter a $20 bill but received change for only $10; that the waiter insisted he had received from plaintiff a $10 bill and stated publicly for all in the lounge to hear: "We have had people try this before"; that in fact plaintiff had tendered a $20 bill, which fact was later admitted by representatives of the hotel and proper change given plaintiff; that the language of the waiter indicated to those present in the lounge that plaintiff was underhanded and of low character and that his demand for change was illegal and comparable to that of a cheat or other person whose reputation for honesty is open to question; that by reason thereof plaintiff was "insulted, humiliated and otherwise embarrassed." The plaintiff sought judgment "for exemplary or punitive damages" of $3,000.

Both here and in the trial court plaintiff expressly disavowed any claim to an action for slander, and asserted that his claim is one for damages for humiliation, insult and embarrassment. Since plaintiff declined to amend his complaint, it is assumed that he has stated his case in its strongest and most favorable light. The question thus presented is whether a patron of a cocktail lounge has a cause of action for humiliation and embarrassment resulting from insulting words of a waiter.

It has been held that an innkeeper owes a duty of extending to a guest respectful and decent treatment, and that the innkeeper is liable to a guest for insulting words or conduct;[1] and a similar duty is

1 Emmke v. De Silva, 8 Cir., 293 F. 17; Frewen v. Page, 238 Mass. 499, 131 N. E. 475, 17 A.L.R. 134; De Wolf v. Ford, 193 N.Y. 397, 86 N.E. 527, 21 L.R.A.,N. S., 860, 127 Am.St.Rep. 969.

placed on common carriers with respect to their passengers.[2] Such duty, however, rests on the peculiar relationship between innkeeper and guest or carrier and passenger. In the instant case the defendant is an innkeeper. The complaint alleges plaintiff was a "guest" at the cocktail lounge, but we take this to mean simply that he was a casual patron of the lounge and not a registered guest of the hotel. One who is merely a customer at a bar, a restaurant, a barber shop or newsstand operated by a hotel does not thereby establish the relationship of innkeeper and guest. Alpaugh v. Wolverton, 184 Va. 943, 36 S.E. 2d 906. The situation, as we see it, is the same as if the plaintiff had been the customer of any restaurant or tavern where drinks are served.

We have found no rule of law imposing on the keeper of a drinking establishment, whether called cocktail lounge, bar, saloon or some other name, a higher degree of civility toward its patrons than is imposed on the operator of a store, a barber shop, a filling station or any other mercantile activity. This dispute over the proper change could have arisen just as easily in any place where one pays for goods or services. Our question, therefore, is whether the customer of a business establishment has a cause of action for humiliation and embarrassment resulting from insulting words or conduct of an employee of the establishment. As far as the complaint discloses, the remark of the waiter was undoubtedly made in the course of his employment.

The question of the right to recover for humiliation and embarrassment, i. e., mental distress, unaccompanied by physical suffering, resulting from insulting language, unaccompanied by physical force or threats, has been the subject of discussion in a number of legal publications. Probably the outstanding article is that of Professor Magruder[3] in 49 Harvard Law Review 1033 (1936) entitled "Mental and Emotional Disturbances in the Law of Torts." The author, after discussing the cases of innkeepers and guests, says, "There is still a question how far this liability for insulting conduct will be extended to other relationships." He favors extension of the liability and suggests this "broad principle" or formula: "that one who, without just cause or excuse, and beyond all the bounds of decency, purposely causes a disturbance of another's mental and emotional tranquility of so acute a nature that harmful physical consequences might be not unlikely to result, is subject to liability in damages for such mental and emotional disturbance even though no demonstrable physical consequences actually ensue."

Professor Magruder admits that his suggested formula will not decide concrete cases; and he furnishes no rules or principles for guidance in applying the formula to a concrete case. What standards would a court or jury in the instant case follow in determining whether the waiter's conduct went "beyond all the bounds of decency," or whether the mental and emotional disturbance was so acute as likely to cause harmful physical consequences? Must every claimed insult be submitted to a jury? Professor Magruder warns against the "danger of getting into the realm of the trivial in this matter of insulting language"; but gives no test for separating the trivial from the serious.

Professor Prosser, in his work on Torts (1941), sec. 11, also strongly advocates the extension of liability for insulting language, and proposes that recovery should be allowed "for any genuine, serious mental injury." He, too, furnishes no guide for determining when the injury is serious, though insisting that liability cannot be extended "to every trivial indignity."

Professor Seitz, in an article in 28 Kentucky Law Journal 411 (1940) entitled "Insults—Practical Jokes—Threats of Future Harm—How New as Torts?" also argues for an extension of liability for insults, but recognizes that liability cannot be extended to all insults. Apparently he would draw the line between insults delivered privately

---

[2] Gillespie v. Brooklyn Heights R. Co., 178 N.Y. 347, 70 N.E. 857, 66 L.R.A. 618, 102 Am.St.Rep. 503; Medlin v. Southern R. Co., 143 S.C. 91, 141 S.E. 185, 56 A. L.R. 767.

[3] Now Judge Magruder of the United States Circuit Court of Appeals, First Circuit.

and those delivered publicly, for he says that individuals "should be relied upon to emotionally repel and forget private insults which reach no other ear but their own," and that public insults afford a greater "stimulus toward mental discomfort."

█ Each of the three writers would rest liability on the degree of the insult and the extent of the suffering caused. Ordinarily the gravity of a defendant's conduct and the amount of injury caused are factors in arriving at the *amount* of recovery, and are not determinative of the *right* to recover. Under the rule proposed, however, it would be necessary to hold that not only the extent of recovery, but the existence of the cause of action is dependent on the amount of damage sustained. If one has a cause of action for an insult only when that insult exceeds the trivial and goes beyond all bounds of decency, and only when such insult produces suffering of a genuine, serious and acute nature, then there must be some rules or standards by which a jury before reaching the realm of amount of recovery may first determine the right of recovery. The jury would have to have some instructions to guide them in determining the bounds of decency and some test to apply in distinguishing between trivial and serious. We know of no workable rule and the authorities furnish us none.

In determining the right of recovery would the bounds of decency and the seriousness of the insult be the same in the cocktail room of "an internationally known hostel" as plaintiff asserts the defendant's hotel to be, and a "beer joint" in an unsavory section of the city? Will the seriousness of the insult, and therefore the existence of the cause of action, depend on the social or business standing of either the one giving or receiving the insult? Will the acuteness of plaintiff's suffering, and therefore defendant's liability, depend on the sensitivity of the particular individual? Are all these matters to be left to the "common sense" of the jury, with no rules for their guidance?

Professor Bohlen, in his article entitled "Fifty Years of Torts," 50 Harvard Law Review 725 (1937), while sympathetic toward an extension of liability for mental and emotional disturbance, points out the difficulty of formulating any rule of general application. Unless liability may be made to rest in individual cases, "upon the enormity of the defendant's conduct," he says "it would be difficult to frame a rule which would allow recovery in such case and not put the ordinary man in the position of answering in damages whenever he had not shown what a sympathetic jury might regard as sufficient consideration of the feelings of his neighbor." His conclusion is:

"One thing seems certain. Life would be intolerable if one must be on one's guard to do nothing which might be expected to offend the sensibility of another. It is safe to predict that whatever relief is to be granted for mental distress will be confined to cases in which the defendants intended to cause it and where the distress is of a sort which the ordinary man regards as very serious." [4]

Again we are brought back to placing liability on the seriousness of the mental disturbance suffered by defendant, but with no rule for distinguishing between serious and nonserious distress. If insults beyond the bounds of decency, causing serious mental disturbance, give rise to legal liability, and if there are no rules or standards by which courts may be guided in determining whether the evidence warrants submitting the case to the jury, and no rules or standards for the jury in determining whether the evidence sustains the charge, then every case of fancied insult and hurt feelings must be submitted to the jury and its verdict must stand. This, as Professor Bohlen says, would make life intolerable. Without rules and standards there is no way to avoid getting into the realm of the trivial.

There are many cases, not subject to classification, touching on the point here in issue. Most of them are cited in the arti-

---

[4] Restatement of the Law of Torts, section 48, after stating the liability of a common carrier for insults by servants, adds the following: "The Institute expresses no opinion as to whether the rule stated in this Section is not also applicable to public utilities other than common carriers and to the possessors of land who for their business purposes hold it open as a place of public resort."

cles to which references have been made. We have found no case which goes so far as to sustain plaintiff's complaint. One case in our own jurisdiction, Clark v. Associated Retail Credit Men, 70 App.D.C. 183, 105 F.2d 62, 66, requires consideration. Both plaintiff and defendant cite it. In that case the court sustained a complaint which charged that the Association by a series of collection letters inflicted upon the plaintiff injuries both mental and physical, for the purpose of collecting a debt. That case is clearly distinguishable from the present one, for there, as the court pointed out, defendant by its demurrer admitted "that it sought to cause not merely mental harm but physical harm as well, and that it succeeded in its purpose." In the present case, there is no claim of physical injury, either intended, probable or actual.

Although the Clark case is distinguishable from the present one, yet there is a statement in the opinion which we think is applicable here. In its preliminary discussion of the law relating to liability for mental distress, unaccompanied by physical injury, the court said:

"The law does not, and doubtless should not, impose a general duty of care to avoid causing mental distress. For the sake of reasonable freedom of action, in our own interest and that of society, we need the privilege of being careless whether we inflict mental distress on our neighbors. It is perhaps less clear that we need the privilege of distressing them intentionally and without excuse. Yet there is, and probably should be, no general principle that mental distress purposely caused is actionable unless justified. Such a principle would raise awkward questions of de minimis and of excuse. 'He intentionally hurt my feelings' does not yet sound in tort, though it may in a more civilized time."

As we read the complaint in the case before us, plaintiff's charge in substance amounts to nothing more than that his feelings were hurt by the waiter's remarks. This, the United States Court of Appeals has said, does not state a cause of action. The complaint was properly dismissed.

Affirmed.