### SCHUH v. PRUDENTIAL INS. CO. OF AMERICA.
### Civ. No. 3394.

United States District Court
D. Minnesota, Fourth Division.

Dec. 6, 1950.

David Shearer, of Minneapolis, Minn. (Shearer, Byard, Trogner & Peters, of Minneapolis, Minn., of counsel), for defendant in support of said motion.

L. G. Fassett and G. W. Townsend, of Minneapolis, Minn., for plaintiff in opposition thereto.

NORDBYE, Chief Judge.

The second amended complaint consists of six counts. The first five counts are predicated upon alleged breach of contracts by defendant of ordinary life insurance, group insurance, the retirement plan for industrial field staff, staff insurance, and a failure to pay plaintiff commissions alleged to be due under the contract of employ-

ment. The sixth count assumes to sound in tort. It alleges that plaintiff was a District Manager of the defendant company in Minneapolis; that commencing at a time prior to the 21st day of November, 1946, defendant entered upon a course of conduct for the purpose of practicing a fraud and deceit upon plaintiff and to wrongfully and unlawfully breach the contracts and rights which are the subject of the first five causes of action. It is alleged that in April, 1946, plaintiff began to suffer from some of the initial symptoms which ultimately resulted in his becoming totally and permanently disabled on October 22, 1948; that defendant knew that plaintiff's health from April, 1946, was growing progressively worse and that it knew that if it could force plaintiff to resign before he became permanently and totally disabled, the defendant would unjustly enrich itself at the expense of plaintiff because it could deprive plaintiff of certain benefits to which he would be entitled. Generally, it may be stated that it is contended that the unjust enrichment sought by defendant would materialize if it could discharge plaintiff and terminate his services with the company before he became permanently and totally disabled; that is, the wrongful purpose was the savings on the various insurance contracts and other benefits inuring to plaintiff which could be effected if plaintiff were no longer in the defendant's employ when he became totally and permanently disabled. The sixth count then states the course of conduct which defendant pursued for the purpose of attaining this end. It is alleged that defendant, through its agents, employees, and officers, began to harass plaintiff by constantly belittling his efforts, in stating that his work was not satisfactory, by threatening to dismiss and discharge him if his production record in the Minneapolis office was not improved, by transferring agents out of his office to other fields, by indulging in criticism of trivial matters, by telling plaintiff if he did not disregard the advice of his physician and return to work on a demoted basis he would be discharged, by telling him that if his attitude towards the company and its representatives was not proper and satisfactory he would be discharged, by threatening to demote him to the position of Assistant District Manager, and by falsely accusing him of malingering.

It was recognized by plaintiff's counsel during the argument on the motion that that which defendant did were acts which came fairly within the scope of an employer's supervision of an employee and that this conduct as related in the sixth count did not constitute unlawful acts in and of themselves; rather, it is argued that the acts may be characterized as lawful acts but they were directed to the attainment of an unlawful result, to wit, the unjust enrichment of the defendant by terminating plaintiff's employment before he became totally and permanently disabled. As illustrative of the unjust enrichment sought, it is alleged that if defendant had been successful in getting plaintiff to accept the suggested demotion, the group insurance benefits would be reduced by $10,000, and that if defendant had been able to force plaintiff to resign before he became totally and permanently disabled, it would bring a cancellation of all group insurance benefits in the total sum of $22,000. Moreover, it is set forth that if defendant had accomplished its purpose, the amounts payable to plaintiff under the retirement plan and by way of renewal commissions would have been materially reduced. Plaintiff contends, however, that he became totally and permanently disabled on or about October 22, 1948, when he was in the employ of defendant, and that the scheme and plan and conspiracy to defraud him of the benefits referred to was not successful. However, it is contended in the sixth count that, as the proximate result of defendant's acts in furtherance of the scheme and conspiracy of unjust enrichment at the expense of plaintiff, the plaintiff's pre-existing physical and mental partial disability was aggravated and brought to a climax on October 22, 1948, when he became totally and permanently disabled, resulting in a loss of salary of $30,000 to date and $150,000 loss of wages in the future, and that plaintiff "has suffered great and severe mental anguish and suffering and nervous debility

402

to his general damage in the sum of $100,-000.00."

In passing, it may be observed that the files and records herein disclose that the contract of employment between plaintiff and defendant was in writing and contained this provision respecting termination, "That his appointment as Superintendent and this Agreement may be terminated by either the Company or the Superintendent at any time; and that if this Agreement be terminated by either the Company or the Superintendent, the compensation and commissions which shall then have been paid to him, together with the amount then accrued and payable under this Agreement, shall be in full settlement of all claims and demands upon the Company in his favor under this Agreement, it being understood that he shall not be entitled to any further compensation or commissions which a continuance of this Agreement might have secured to him."

There is no denial by plaintiff that this provision was in full force and effect during the entire period with which we are concerned. And obviously it indicates a striking inconsistency with the alleged scheme and plan of the defendant to cause plaintiff to terminate his employment by harassment and criticism, when the contract permitted defendant to terminate the employment at anytime. However, notwithstanding this rather anomalous situation, it seems necessary for the Court to consider the question as to whether or not plaintiff has stated a claim in the sixth count upon which relief can be granted.

It will be observed that plaintiff does not seek any recovery because of any attempted unjust enrichment which was the alleged objective of defendant's conduct. The damages allegedly sustained by plaintiff are not those which the defendant's acts sought to achieve. It is not contended that defendant intentionally caused plaintiff's mental or physical breakdown or that it intended by its conduct to aggravate plaintiff's mental and physical condition. In fact, the inference is quite to the contrary. Defendant, according to the plaintiff, was apprehensive that plaintiff would become totally and permanently disabled when he was in the employ of defendant as its District Manager; therefore, it would not be likely to do anything intentionally which would accelerate his mental breakdown. Defendant's alleged course of conduct was directed to a termination of the employment or a demotion before plaintiff's physical condition evolved into total and permanent disability. In other words, we have a situation where certain lawful acts were directed to attain alleged unlawful ends which were not obtained, and it is contended that certain mental injuries proximately resulted which were not intended by defendant and which are not alleged to have been reasonably foreseeable by defendant as a result of its conduct.

The situation as set forth does not involve, of course, any threatened physical injury or any physical peril to the plaintiff. Any aggravation of plaintiff's health by the conduct of the defendant necessarily resulted from mental worry or mental concern. And this mental condition is alleged to have had an effect upon the final mental and physical breakdown. Although the question of what damages may be allowed in tort actions, in the absence of some injury or threatened injury to the plaintiff, has resulted in a divergence of views among the courts, the problem presented herein at the outset under the pleadings is whether any tort has been alleged upon which the damages claimed can be predicated. It is axiomatic that in order to have a tort there must be a violation of a duty or a legal right. As alleged, the acts of the defendant became wrongful because of the wrongful objective. In absence of a wrongful objective, the conduct violated no legal right of the plaintiff. The only legal right which plaintiff possessed under these allegations consisted of the duty of the defendant to refrain from pursuing a course of action intentionally directed to the achievement of unlawful ends. It is the alleged unlawful ends which rendered the intentional conduct in violation of plaintiff's rights. The conduct as set forth in this count, without the alleged unlawful enrichment objective, would not be violative of any legal right of the plaintiff, and it must necessarily follow that such lawful conduct cannot be the basis of any legal

right in tort in absence of an intention to cause, or other actionable negligence which would proximately cause, a wrongful result. In other words, the lawful conduct of the defendant cannot be made tortious because it caused an aggravation of plaintiff's physical condition in absence of a showing of an intent to produce the physical aggravation or in absence of allegations that defendant should have realized that its conduct involved an unreasonable risk of causing the mental distress, and that it should have realized that the mental distress might cause an aggravation of the illness from which plaintiff was suffering. Restatement of Torts, § 313. One cannot spell out or infer an intent of the defendant to effect mental injuries upon plaintiff by reason of acts set forth in this count merely because of an illegal intent of the defendant to obtain an unlawful enrichment therefrom.

■ Minnesota recognizes that the great weight of authority "sustains the doctrine that there can be no recovery for fright which causes injury without impact; that is, in the absence of any contemporaneous physical injury to the plaintiff. * * * This rule, as thus broadly stated, has not been accepted by this court; but, with the modification hereafter stated, it is the law of this state." Sanderson v. Northern Pacific Ry. Co., 88 Minn. 162, 166, 92 N.W. 542, 60 L.R.A. 403. And 88 Minn. on page 168, 92 N.W. on page 543 of that decision appear the conclusions of the court as to the teachings of the Minnesota decisions. "From the consideration of the decisions of this court cited, we hold that there can be no recovery for fright which results in physical injuries, in the absence of contemporaneous injury to the plaintiff, unless the fright is the proximate result of a legal wrong against the plaintiff by the defendant."

■ The Minnesota decisions do not discuss in any detail the scope or type of the legal wrong which must exist before there can be recovery for so-called mental injury without contemporaneous injury. However, it is to be assumed that in referring to legal wrong, the court had in mind that a legal wrong is one which constitutes the invasion of some legal right of another. The conduct of the defendant herein, as set forth in this count, did not constitute any violation of a legal right of the plaintiff in absence of an intent on the part of the defendant to bring about a mental breakdown, or an absence of a showing that defendant "should have realized that his conduct involved an unreasonable risk of causing the distress * * * and from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm." Restatement of Torts, § 313. There are no allegations in this count which establish that the conduct of the defendant, so far as producing any mental injuries is concerned, constituted an invasion of any legal rights of the plaintiff. Defendant is not even charged with ordinary negligence. The court must conclude that on this record no actionable tort is alleged.

Reference may be made to Clark v. Association of Retail Credit Men, 70 App.D.C. 183, 105 F.2d 62, 66, wherein the United States Court of Appeals for the District of Columbia considered the question as to whether or not a collection agency was liable in damages when it knew that plaintiff was suffering from arterial hypertension and other ailments and then intentionally inflicted a relapse by sending to the plaintiff letters threatening suit, attachment, garnishment, etc. The matter came before the court on defendant's demurrer and the court in overruling the demurrer stressed the fact that the defendant by its demurrer admitted that "it sought to cause not merely mental harm but physical harm as well, and that it succeeded in its purpose." In discussing the various decisions and textbooks on the question of liability for mental injuries, it quoted with approval from Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard Law Review 1033, 1058, wherein the author assumed to lay down the principles that the majority of the courts would probably follow in cases of this kind. " 'We would expect * * * the gradual emergence of a broad principle somewhat to this effect: that one who, without just cause or excuse, and beyond all the bounds

of decency, purposely causes a disturbance of another's mental and emotional tranquillity of so acute a nature that harmful physical consequences might be not unlikely to result, is subject to liability in damages for such mental and emotional disturbance even though no demonstrable physical consequences actually ensue.'" 105 F.2d at page 65.

It will be observed that this author emphasized that there must be an intentional or purposeful causing of the resulting mental and emotional disturbance. A reading of the sixth count clearly indicates that the pleader herein has fallen far short of coming within the scope of the principles laid down and approved in the Clark case. As indicated in the quotation from the Restatement of Torts, there may be situations where damages may be allowed for mental injuries, in the absence of any intent, but the allegations in this count are not sufficient to come within the principles enunciated in that modern treatise on the question. In citing Restatement of Torts on this question, this Court does not necessarily assume that the Minnesota Supreme Court would adopt the modern doctrine enunciated in that text on this subject. The principles adopted therein go much further than the teachings of the Minnesota decisions in recognizing liability for mental injuries without contemporaneous physical injuries. Suffice it to say that even applying the broad principles approved in the Restatement of Torts, the sixth count of this complaint fails to state a claim upon which any relief can be granted, and it should therefore on this motion be dismissed. It is so ordered.

The remainder of the motion refers to a portion of Paragraph III of the second count wherein the plaintiff alleges that defendant failed to pay the benefits due under certain group insurance policies and states that "said refusal by defendant was made in bad faith and for the wrongful purposes as set forth in the Sixth Count hereof." Obviously, the motion to strike the quoted portion of Paragraph III of the second count in view of the dismissal of the sixth count should be granted. It is so ordered.

An exception is allowed.