(84 South. 37)

No. 22454.

NICKERSON et al. v. HODGES et al.

(Feb. 2, 1920. Rehearing Denied March 1, 1920.)

*(Syllabus by Editorial Staff.)*

Torts ⬤➝6—Damages are recoverable for mental suffering of deceived treasure hunter.

Where plaintiff, informed by a fortune teller that her relatives had buried gold on a third person's premises, secured permission to dig thereon, and did so, and defendants filled a pot full of rocks and dirt, and buried it where plaintiff and other searchers found it as a "pot of gold," it being taken to a bank in accordance with directions of a note found on top, and held for three days before opening in the presence of all heirs, when the true character of the contents was discovered, defendants are liable to plaintiff and her heirs for the consequences of the disappointment and mental suffering thus occasioned; plaintiff being entitled to substantial damages had she lived, but her heirs, substituted as plaintiffs, being entitled to only $500.

Sommerville and O'Niell, JJ., dissenting.

Appeal from Second Judicial District Court, Parish of Webster; J. N. Sandlin, Judge.

Suit by Miss Carrie E. Nickerson against A. J. Hodges and others, wherein Mrs. Annie Raley and others, plaintiff's heirs, were substituted as plaintiffs on her death. From a judgment for defendants, plaintiffs appeal. Annulled and reversed, and judgment ordered for plaintiffs as against certain defendants.

L. K. Watkins, of Minden, for appellants.

Drew & Drew, of Minden, for appellees.

DAWKINS, J. Miss Carrie E. Nickerson brought this suit against H. R. Hayes, William or "Bud" Baker, John W. Smith, Mrs. Fannie Smith, Miss Minnie Smith, A. J. Hodges, G. G. Gatling, R. M. Coyle, Sam P. D. Coyle, and Dr. Charles Coyle, claiming $15,-000 as damages, alleged to have been caused in the form of financial outlay, loss in business, mental and physical suffering, humiliation, and injury to reputation and social standing, all growing out of an alleged malicious deception and conspiracy with respect to the finding of a supposed pot of gold. Subsequent to the filing of the petition, and before the trial, the said Miss Nickerson died, and her legal heirs, some 10 in number, were made parties plaintiff, and now prosecute this suit.

All of the defendants, save and except Miss Minnie Smith, William or "Bud" Baker, and H. R. Hayes, filed, in effect, a general denial, denying any knowledge of or connection with the matters out of which the alleged damages arose. These three defendants filed a joint answer, in which, after denying the injuries charged, or that there was any malicious or unlawful intent, admitted that they had fixed up an old copper bucket or pot, filled with dirt and rocks, and had buried it at a point where the said Miss Carrie Nickerson and her helpers would likely dig in search of an imaginary pot of gold; that she and her said associates had been, for several months, digging over the property of defendant, John W. Smith, on information obtained from a negro fortune teller in the city of Shreveport, and boarding at the home of the said Smith, father of the said Minnie Smith, without paying therefor, and generally acting in such a manner as to make themselves nuisances to

the community; that the course adopted by these three defendants was for the purpose of convincing the explorers of their folly; that it was intended as a practical joke, and succeeded in accomplishing the purpose mentioned.

For some reason the case was allowed to remain on the docket of the lower court for more than three years before being tried, when it was finally submitted to a jury, and resulted in a verdict in favor of the defendants. After an unsuccessful motion for a new trial, the plaintiffs prosecuted this appeal.

### Statement of Facts.

Miss Nickerson was a kinswoman of Burton and Lawson Deck, the exact degree of relationship not being fully shown by the record, and there had been, in the family, a tradition that these two gentlemen, who died many years ago, had prior to their deaths, buried a large amount of gold coin on the place now owned by the defendant John W. Smith, or on another near by. She was employed by the California Perfume Company to solicit orders for their wares in the towns, villages, etc., in Webster and other parishes, and on the occasion of a visit to the city of Shreveport seems to have interviewed a negro fortune teller, who told her that her said relatives had buried the gold, and gave her what purported to be a map or plat showing its location on the property of Smith. Thereafter, with the help of some three or four other persons, principally relatives, and one Bushong, she spent several months digging, at intervals, around the house and on the premises of Smith, who seems to have extended them a cordial welcome, and to have permitted them to dig almost without limit as to time and place, and in addition boarded the fortune hunters, while so engaged, without charge. We assume that this was due, perhaps, to the fact that he, too, had a slight

146 LA.—24

hope that they might find something, and he was to receive a part thereof for his concessions. At any rate, the diggers pursued their course with such persistence and at such lengths, digging around the roots of shade trees, the pillars of his house, etc., until finally, his daughter, the said Minnie Smith, William or "Bud" Baker, and H. R. Hayes conceived the idea of themselves providing a "pot of gold" for the explorers to find. Accordingly they obtained an old copper kettle or bucket, filled it with rocks and wet dirt, and buried it in an old chimney seat on the adjoining place, where the searchers had been or were intending to also prospect for the supposed treasure. Two lids or tops were placed on the pot, the first being fastened down with hay wire; then a note was written by Hayes, dated, according to some, July 1, 1884, and, as to others, 1784, directing whoever should find the pot not to open it for three days, and to notify all the heirs. This note was wrapped in tin, placed between the first and second lids, and the latter was also securely fastened down with hay wire. This took place some time toward the latter part of March, and, according to these three defendants, was to have been an April fool; but plans miscarried somewhat, and the proper opportunity for the "find" did not present itself until April 14th. On that day Miss Nickerson and her associates were searching and digging near the point where the pot had been buried, when one Grady Hayes, a brother of H. R. Hayes, following directions from the latter, and apparently helping the explorers to hunt for the gold, dug up the pot and gave the alarm. All of those in the vicinity, of course, rushed to the spot, those who were "in" on the secret being apparently as much excited as the rest, and, after some discussion, it was decided to remove the lid. When this was done, the note was discovered, and H. R.

Hayes advised Miss Nickerson that he thought it proper that its directions should be carried out, and that the bank at Cotton Valley, a few miles distant, was the best place to deposit the "gold" for safe-keeping, until the delays could run and the heirs be notified, as requested. Following this suggestion, the pot was placed in a gunny sack, tied up, and taken to the bank for deposit. Defendant Gatling was the cashier of the bank, but refused to give a receipt for the deposit as a "pot of gold," because, as he insisted, he did not know what it contained.

As might have been supposed, it did not take long for the news to spread that Miss Nickerson and her associates in the search for fortune, had found a pot of gold, and the discussion and interest in the matter became so general that defendant A. J. Hodges, vice president of the bank, went over from his place of business in Cotton Valley to the bank, and he and Gatling, after talking the matter over, decided to examine the pot, so that, in event it did contain gold, proper precautions to guard the bank might be taken, pending the return of Miss Nickerson and the appearance of those who might claim the fortune. These two undid the wire sufficiently to peep into the pot, and discovered that it apparently contained only dirt. They then replaced the lid and held their tongues until the reappearance of Miss Nickerson. However, the secret leaked out from other sources, that the whole matter was a joke, and this information too, became pretty well distributed.

After depositing the pot in the bank, Miss Nickerson went to Minden, La., and induced Judge R. C. Drew to agree to accompany her to Cotton Valley on the following Monday (the deposit at the bank having been made on Saturday) for the purpose of seeing that the ceremonies surrounding the opening of the treasure were properly conducted.

Judge Drew swears that he had heard in some way that the matter was a joke, and so informed Miss Nickerson, warning her not to place too much faith in the idea that she was about to come into a fortune, but that finally, because of his friendly relations with and kindly feeling toward her, he consented and did go, mainly to gratify her wishes in the premises. Some half a dozen other relatives of Burton and Lawson Deck were notified, and either accompanied or preceded Miss Nickerson to Cotton Valley.

With the stage thus set, the parties all appeared at the bank on Monday morning at about 11 o'clock, and among the number were H. R. Hayes, one of the defendants, who seems to have been one of the guiding spirits in the scheme, and one Bushong, the latter, we infer, from intimations thrown out by witnesses in the record, being at the time either an avowed or supposed suitor of Miss Nickerson's. Judge Drew, as the spokesman for the party, approached Gatling and informed him that it was desired that the pot be produced for the purpose of opening and examining the contents for the benefit of those thus assembled. The testimony of the witnesses varies a little as to just when the storm began; some say, as soon as the sack was brought out. Miss Nickerson discovered that the string was tied near the top, instead of down low around the pot, and immediately commenced to shout that she had been robbed; others insist that she was calm until the package was opened and the mocking earth and stones met her view. Be that as it may, she flew into a rage, threw the lid of the pot at Gatling, and for some reason, not clearly explained, turned the force of her wrath upon Hayes to such an extent that he appealed for protection, and Bushong, with another, held her arms to prevent further violence.

Miss Nickerson was a maiden, nearing the

age of 45 years, and some 20 years before had been an inmate of an insane asylum, to the knowledge of those who had thus deceived her. She was energetic and self-supporting in her chosen line of employment, as a soap drummer, until she met the colored fortune teller who gave her the "information" which she evidently firmly believed would ultimately enable her to find the fortune which the family tradition told her had been left hidden by her deceased relatives. The conspirators, no doubt, merely intended what they did as a practical joke, and had no will-ful intention of doing the lady any injury. However, the results were quite serious indeed, and the mental suffering and humiliation must have been quite unbearable, to say nothing of the disappointment and conviction, which she carried to her grave some two years later, that she had been robbed.

If Miss Nickerson were still living, we should be disposed to award her damages in a substantial sum, to compensate her for the wrong thus done; but as to the present plaintiffs, her legal heirs, we think that a judgment of $500 will reasonably serve the ends of justice. R. C. C. art. 2315.

The evidence fails to connect any of the defendants with the conspiracy, so as to render them liable, save and except H. R. Hayes, William or "Bud" Baker, and Miss Minnie Smith; hence the judgment will be awarded against these only.

For the reasons assigned, the judgment appealed from is annulled and reversed, and it is now ordered and decreed that the plaintiffs do have and recover judgment against the defendants H. R. Hayes, William or "Bud" Baker, and Miss Minnie Smith in the full sum of $500, and as to the other defendants the demands are rejected; the defendants so cast to pay all costs.

SOMMERVILLE and O'NIELL, JJ., dissent.