419 So.2d 102 (1982)
Chetta Tuminello FERLITO, Plaintiff-Appellant,
v.
Russell E. CECOLA, Defendant-Appellee.
No. 14946.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1982.
Writ Denied November 5, 1982.
*103 Bodenheimer, Jones, Klotz & Simmons by Frank H. Thaxton, III, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Bernard S. Johnson, Shreveport, for Russell E. Cecola defendant-appellee.
Before PRICE, HALL and JASPER E. JONES, JJ.
PRICE, Judge.
Plaintiff, Chetta Tuminello Ferlito, appeals from a judgment granting defendant's motion for dismissal in an action relating to the performance of dental services. We affirm.
On January 7, 1981, plaintiff filed suit seeking damages for injuries allegedly sustained as a result of dental treatment she received from defendant, Dr. Russell E. Cecola. In her petition, plaintiff alleged that she paid defendant $4,000 to provide crowns for her teeth so as to make them uniform in shape, color, and quality. Plaintiff further alleged that during a seven-month period of treatment, defendant was unsuccessful in making the crowned teeth resemble the shape and color of her original teeth. Plaintiff asserted that she was forced to employ another dentist to make the necessary adjustments to her crowned teeth so that they now resemble the shape and color of her original teeth.
Plaintiff also alleged that during the time defendant treated her, she was subjected to verbal abuse and on one occasion was pushed against a wall by defendant.
At trial, plaintiff testified that she went to defendant for treatment of two upper front teeth which were discolored and crooked. After consulting with defendant, it was decided that most of her teeth were to be crowned. Plaintiff further testified that defendant promised "he would do anything he could to please me" and that "he was going to make the teeth real pretty."
Plaintiff stated that the first set of permanent crowns she was fitted with were not properly shaped or colored. In an attempt to satisfy plaintiff, defendant removed *104 six crowns from plaintiff's upper front teeth and replaced them with another set. Plaintiff testified that the replacements were also unsatisfactor because they were misaligned and were not the size, shape, or color of her original teeth. Over the next several months defendant unsuccessfully attempted to satisfy plaintiff by making requested adjustments to the crowns on her front teeth.
Plaintiff also testified that over the course of treatment, defendant often responded to her complaints by saying that she was in need of a psychiatrist. These episodes occurred in front of defendant's nurse and the lab technician who prepared plaintiff's crowns. On another occasion, after plaintiff had submitted a list of her complaints to the doctor, defendant was overheard uttering a profane remark directed at plaintiff. On that occasion, defendant was unaware of plaintiff's presence because she had followed defendant's nurse into the office without being invited.
Plaintiff also testified that on one visit to the doctor's office, defendant pushed her into a wall.
Finally, plaintiff testified that another dentist, Dr. McInnis, made the necessary adjustments to the crowns on plaintiff's six front teeth so that they now resemble the original teeth in shape, size, and color. Other witnesses testified to the improvement in plaintiff's appearance after the work performed by Dr. McInnis.
The deposition of Dr. McInnis was admitted into evidence at trial. He testified that plaintiff was not satisfied with the first set of crowns he fitted on her front teeth so a second set was prepared. Dr. McInnis stated that the crowns he fitted on plaintiff's teeth were made by the same dental laboratory which defendant employed and were of the same color as the crowns used by defendant. He further testified that any adjustments he made to plaintiff's teeth were very minor in nature. In his opinion, there was nothing defective about the work performed by defendant.
At the close of plaintiff's evidence, defendant moved for dismissal under La. C.C.P. Art. 1810(B). The trial court granted the motion, finding plaintiff failed in her burden of proving malpractice under La. R.S. 9:2794 since she did not show that defendant lacked the knowledge, skill, or degree of care ordinarily exercised by dentists licensed in this state.
On appeal, plaintiff does not contest the finding of the trial court that she failed to prove malpractice under La. R.S. 9:2794. However, plaintiff contends the trial court erred in granting defendant's motion for dismissal because the evidence shows the existence of a contractual relationship between plaintiff and defendant, thus her action is for breach of contract, not malpractice. Plaintiff further contends that since the undisputed evidence shows verbal abuse and battery committed by defendant upon the person of plaintiff, she has proven a prima facie case of tort separate from any malpractice action.
Louisiana Code of Civil Procedure Article 1810(B) provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In considering a motion under La. C.C.P. Art. 1810(B), the trial court must weigh and evaluate all the evidence presented and must grant a dismissal if plaintiff has not carried the burden of proof by a preponderance of the evidence.
Sevin v. Shape Spa for Health & Beauty, Inc., 384 So.2d 1011 (La. App. 4th Cir. 1980); Bryan v. Varnado, 394 So.2d 1321 (La. App. 1st Cir. 1981); Standard Machine & Equipment Co. v. Southern Pacific Transportation Co., 410 So.2d 842 (La. App. 3d Cir. 1982).
*105 Applying this standard to the present case, we hold that the trial court did not err in granting defendant's motion for dismissal.
In support of her contention that a contractual relationship existed between the parties, plaintiff cites her testimony whereby she claims defendant promised to do anything to please her and make her teeth "pretty." Plaintiff contends that these statements were a guarantee of results by defendant. Plaintiff argues that since she has proven the failure of defendant to perform the dental work to her satisfaction, it was error for the trial court to categorize this suit as a malpractice action and grant the motion to dismiss.
When a physician undertakes the treatment of a patient, he does not guarantee a cure and the law does not impose an implied undertaking to cure. If a patient is negligently injured by his physician, an action against that physician lies in tort (malpractice), unless the physician has contracted with the patient for a specific result. Sciacca v. Polizzi, 403 So.2d 728 (La. 1981). In the instant case, a purported promise by defendant to "please" plaintiff and make her teeth "pretty" is not such a guarantee of result as to establish a contract between the parties. Since plaintiff has failed to prove the existence of a contract, her action lies in tort. It is undisputed that plaintiff failed to prove defendant's malpractice under La. R.S. 9:2794.
Although plaintiff does not advance any particular theory of recovery for the verbal abuses purportedly committed by defendant, Louisiana law has allowed recovery for defamation and intentional infliction of emotional distress.
To maintain an action in defamation, the following elements must be shown: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196 (La. 1980).
First, the instances where defendant purportedly told plaintiff she was in need of a psychiatrist are not sufficient to constitute defamation. The words are not defamatory per se, nor has plaintiff proven malicious intent on the part of defendant or any resulting injury. Second, the profane remark allegedly uttered by defendant does not constitute defamation. Profane language, although disgusting and uncouth, is not defamatory per se. Harris v. Levy, 353 So.2d 1065 (La. App. 2d Cir. 1977). Furthermore, plaintiff has not shown malice on the part of defendant or any resulting injury from the remark.
Plaintiff has also failed to prove that the remarks allegedly made by defendant constitute an intentional infliction of emotional distress. In Steadman v. South Central Bell Telephone Co., 362 So.2d 1144 (La. App. 2d Cir. 1978), this court made the following observation:
The general rule of law concerning damages for mental distress due to intentional torts is that the defendant must either have actively desired to bring about the mental anguish or realized to a virtual certainty that it would occur. See 23 Louisiana Law Review 281 at 292; Prosser, Law of Torts (1971), 4th Ed., § 12, p. 49. Recovery for mental anguish caused by intentional torts has generally been limited to instances of outrageous conduct. Malone, Studies in Louisiana Tort Law (1970), p. 39; Nickerson v. Hodges, 146 La. 735, 84 So. 37 (1920).
In the instant case, a review of the evidence does not disclose the requisite intent on the part of defendant or the type of outrageous conduct necessary to establish this intentional tort.
Concerning plaintiff's claim that defendant has committed a battery upon her person, the record shows that any such incident was minor in nature and no damages have been suffered by plaintiff. Therefore, plaintiff would not be entitled to any recovery as a matter of law.
In summary, our review of the record convinces us that the trial court properly granted defendant's motion to dismiss under La. C.C.P. Art. 1810(B). Accordingly, *106 the judgment of the district court rendering a judgment of dismissal in favor of defendant is affirmed. All costs of this appeal are assessed to plaintiff.