David C. BYRNES

v.

ORKIN EXTERMINATING COMPANY, INC., etc., et al.

Civ. A. No. 82–3005.

United States District Court, E.D. Louisiana.

May 16, 1983.

Steven J. Koehler, Metairie, La., for plaintiff.

James B. Irwin, New Orleans, La., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

In this matter, removed by the defendants from Louisiana state court on the basis of diversity jurisdiction, plaintiff seeks recovery for unpaid wages, penalty wages, and attorneys' fees as provided by state statute. Plaintiff also seeks recovery for the tort of intentional infliction of emotional distress. This matter was tried without a jury on March 3, 4, 1983, and was thereafter taken under submission. After considering the evidence and applicable law, I make the following findings of fact and conclusions of law. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

1. Plaintiff was hired as an outside salesman by defendant Orkin Extermination Company in March of 1981. As such, plaintiff's responsibility included selling large commercial pest control contracts in Arkansas, Louisiana, Mississippi and Alabama. Plaintiff earned a base salary of $625 semi-monthly, plus commissions on

contracts sold that met certain company requirements.

2. It was the company policy for salesmen such as plaintiff to submit weekly expense reports and customer contact status reports, which account for the salesman's whereabouts during the week and the appointments he had made. In addition, the salesman was required to call in to Orkin's Atlanta office on a daily basis to report his appointments, both for that day and the next, and to inform the Atlanta office of any contracts which he may have sold. According to written company policy, failure to comply with this last requirement for two days could be considered a voluntary resignation. Defendants' Exhibit 20 at p. 32.

3. Throughout his employment by defendant Orkin, plaintiff was repeatedly counseled by his supervisors, including defendant Cohen, for failure to file required paperwork and for failure to call in as required. After plaintiff discontinued the filing of all required paperwork sometime in early September of 1981, defendant Cohen ultimately informed plaintiff in early December of 1981 that he was required to meet certain specified production quotas and filing requirements or else he would be terminated as of January 1, 1982.

4. Plaintiff's last phone contact with the Atlanta office was on Friday, December 18, 1981. During the week of December 21, 1981, both the Orkin main office, and the New Orleans Orkin branch attempted to contact plaintiff without success. Defendant Cohen then sent plaintiff a termination letter on December 30, 1981, Defendant Exhibit 13, notifying him that he was terminated effective December 21, 1981, for having failed to communicate with the Atlanta office since Friday, December 18, 1981. This letter was sent to plaintiff's last-known address. No check for wages due

was enclosed in this letter. It is, however, undisputed that all salary owed through December 15, 1981, had been paid prior to the mailing of this letter.

5. The plaintiff did not receive the December 30th letter in due course because he had moved from the address on file with his employer. The letter was returned to the defendant Orkin.

6. On January 4, 1982, plaintiff wrote a resignation letter in which he demanded that all compensation due him be paid within seventy-two hours and in which he stated his new address. Plaintiff's Exhibit 6.[1] This letter was addressed to a Mr. Dennard of Orkin, who was not plaintiff's supervisor, not involved in the payment of plaintiff's salary, and not the party to whom salesmen's resignations were customarily directed. These facts were known by plaintiff. The letter was also improperly addressed to an Orkin office building in Atlanta other than that in which Mr. Dennard's office was located and was received there on January 6, 1982. The letter was routed to Mr. Dennard's office and ultimately to the plaintiff's supervisor, defendant Cohen.

7. On January 20, 1982, defendant Cohen sent plaintiff his final paycheck in the gross amount of $156.24 as settlement for the period worked from December 15, 1981, through December 18, 1981, representing pay for three days of the twelve day work period from December 16–31, 1981. Plaintiff's Exhibit 7. Also enclosed in the January 20th transmittal was the termination letter of December 30th, Defendants' Exhibit 13. In the period between the receipt of plaintiff's demand letter and the mailing of the paycheck, Orkin's Atlanta offices were closed for three and one-half days due to a snowstorm that hit the city.

8. Plaintiff did not deny that he failed to contact the Atlanta office after Decem-

---

1. Counsel have stipulated that there is no longer any dispute as to the commissions mentioned in the letter. The relevance of the letter, therefore, is only as a demand for salary due. Plaintiff did contend at trial that certain "other earnings" in the gross amounts of $1,376.80 and $124.26, listed on Plaintiff's Exhibit 10, were not paid. This issue was raised for the first time at trial and was not listed in the pretrial order. The issue was, therefore, improperly raised at trial. Nevertheless, the evidence preponderates to the effect that such amounts were paid.

ber 18, 1981, and admitted on cross-examination that he did no work for Orkin after December 22, 1981. Relying on entries contained in his pocket calendar, Defendants' Exhibit 14, plaintiff testified that he did work for Orkin on December 21st and 22nd, but could not recall the details of such work. There is little substantiation that plaintiff worked for the defendant Orkin after December 18, 1981, and, accordingly, I find that he did not.

9. Plaintiff also testified at length about five incidents during his employment by defendant Orkin in which defendant Cohen is said to have cursed the plaintiff, "taken over" sales presentations, and otherwise embarrassed the plaintiff in the presence of customers and fellow workers. Plaintiff also testified that after the first such incident, he provided defendant Cohen with a copy of a psychological assessment of himself prepared in connection with plaintiff's employment by Orkin. Plaintiff's Exhibit 14. The industrial psychologist who prepared the assessment, but who did not testify at trial, characterized the plaintiff in the report as "rather emotional" and "sensitive to criticism."

10. Defendant Cohen recalled seeing the psychological assessment of plaintiff, but denied that he ever directed profanities "at" the plaintiff, while admitting the use of such language in some discussions with him. Cohen also explained that his only intention in his treatment of plaintiff was to educate and motivate him as a salesman.

### Conclusions of Law

1. This court has jurisdiction over this matter based on diversity of citizenship, the amount alleged to be in controversy exceeding $10,000. 28 U.S.C. § 1332.

2. Plaintiff Byrnes' employment by defendant Orkin was justifiably terminated effective December 18, 1981.

3. A salaried employee is not entitled to be paid salary after the last day he actually worked for his employer, even though the decision to terminate was not made until several weeks after the employee stops working. *Meek v. River Parishes Co.*, 365 So.2d 878 (La.App. 4th Cir.1978). A terminated salaried employee should be paid in the proportion of the days he worked to working days in the month. *Vanacor v. St. Amant*, 379 So.2d 769 (La.App. 4th Cir.1979). Having found that the plaintiff did not work for defendant Orkin after December 18, 1981, and having found that the plaintiff was paid three-twelfths of his semi-monthly salary for the period December 18–31, 1981, I conclude that all amounts due under the terms of the employment relationship between plaintiff and defendant Orkin were paid.

4. An employer's failure to pay the amount of salary indisputedly due to an employee within three days of discharge or resignation may subject the employer to penalty wages. La.Rev.Stat.Ann. §§ 23:631–632 (West Supp.1983). The employer, however, may avoid the payment of penalty wages if the employer has some equitable justification for not paying the salary timely. *Carriere v. Pee Wee's Equipment Co.*, 364 So.2d 555 (La.1978); *Becker v. Choate*, 204 So.2d 680 (La.App. 3rd Cir.1967) (overruled by *Carriere* only insofar as it allowed an equitable defense to a claim for attorney's fees). While Orkin did not pay the $156 due the plaintiff within three days of termination, I conclude that the circumstances surrounding the plaintiff's termination provide an equitable justification for late payment. Those circumstances include the plaintiff's failure to notify defendant Orkin of his change of address, the fact that plaintiff misaddressed his demand letter and furthermore sent it to an inappropriate party, and the fact that Orkin's offices were closed for three and one-half days due to a snowstorm.

5. Because no wages have been found to be due, this claim cannot be considered a "well-founded" suit for recovery of past due wages. Plaintiff's claim for attorney's fees is, therefore, denied. La. Rev.Stat.Ann. § 23:632; *Carriere,* 364 So.2d at 556–57; *Draughn v. Breaux Mart,* 411 So.2d 1188, 1191 (La.App. 4th Cir.1982).

6. Concerning the plaintiff's other cause of action:

The general rule of law concerning damages for mental distress due to intentional torts is that the defendant must either have actively desired to bring about the mental anguish or realized to a virtual certainty that it would occur. See 23 Louisiana Law Review 281 at 292; Prosser, *Law of Torts* (1971), 4th Ed., § 12, p. 49. Recovery for mental anguish caused by intentional torts has generally been limited to instances of outrageous conduct. Malone, *Studies in Louisiana Tort Law* (1970), p. 39; *Nickerson v. Hodges,* 146 La. 735, 84 So. 37 (1920). *Steadman v. South Central Bell Telephone Co.,* 362 So.2d 1144, 1145 (La.App. 4th Cir. 1978).

7. Neither requirement is met in the instant case. First, I conclude that defendant Cohen did not "actively desire" to bring about any emotional distress in the plaintiff. Cohen's intentions, much as any supervisor's in a similar situation, were pretty clearly to motivate a recalcitrant employee. Nor can Cohen's knowledge of the contents of the plaintiff's psychological assessment be said to have made Cohen realize "to a virtual certainty" that mental anguish would result from his behavior toward plaintiff. At most the report indicates critical and autocratic management of the plaintiff could result in the plaintiff leaving Orkin's employ. Second, Cohen did not exhibit the "outrageous" conduct necessary to establish the tort of intentional infliction of emotional distress. *Ferlito v. Cecola,* 419 So.2d 102 (La.App. 2d Cir.1982); *Steadman,* 362 So.2d at 1145 (citing *Nickerson v. Hodges,* 146 La. 735, 84 So. 37 (1920)); *Roshto v. Bajon,* 335 So.2d 486 (La.App. 1st Cir.1976).

8. Accordingly, plaintiff's claims against defendants Orkin and Cohen are denied, at plaintiff's cost. Counsel for defendants shall submit a judgment consistent with this opinion.